COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


DEBORAH PATTERSON

                                      MEMORANDUM OPINION*
v.    Record No. 2528-99-2                PER CURIAM
                                        MARCH 28, 2000
NOTTOWAY COUNTY DEPARTMENT
 OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
                       Thomas V. Warren, Judge

           (Paul W. Cella, on briefs), for appellant.

           (Carol B. Gravitt; Gravitt & Gravitt, P.C.,
           on brief), for appellee.


     Deborah Patterson appeals the decision terminating her

parental rights to four of her children.  On appeal, Patterson

contends that the trial judge erred by (1) allowing an expert

witness to present hearsay information on which she based her

opinion; (2) allowing into evidence hearsay concerning the

children's school attendance; and (3) finding that the Nottoway

County Department of Social Services provided sufficient evidence

that neglect or abuse suffered by the children presented a

substantial threat to their lives, health, or development and that

the conditions could not be substantially corrected or eliminated

within a reasonable time.  Upon reviewing the record and briefs of

———————————————————

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.

See Rule 5A:27.

## Hearsay

Patterson contends that the trial judge erred by allowing Michele Killough Nelson, a licensed clinical psychologist, to testify that the children were alleged to have engaged in panhandling while with Patterson.  Patterson argues that the reports of panhandling were inadmissible hearsay.  We find no error.

> In any civil action any expert witness may give testimony and render an opinion or draw inferences from facts, circumstances or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify. The facts, circumstances or data relied upon by such witness in forming an opinion or drawing inferences, if of a type normally relied upon by others in the particular field of expertise in forming opinions and drawing inferences, need not be admissible in evidence.

Code § 8.01-401.1.

Nelson testified that she reviewed the records provided to her by the Department, spoke with Patterson and each of the children, and interviewed certain family members and other individuals.  One area of concern which Nelson identified was "whether [Patterson] told blatant mistruths or whether her perception of things is so radically different" from that of others.  As an example, Nelson noted that, although Patterson

-

denied any incidents of panhandling, each of the children confirmed at least one instance of panhandling.

Over Patterson's objection, the trial court ruled "it is something that she, as a licensed clinically [sic] psychologist considers and I consider the fact . . . that she did not see the pan handling first hand but do consider this a [legitimate] source of information as a basis for her opinion." Citing McMunn v. Tatum, 237 Va. 558, 379 S.E.2d 908 (1989), Patterson contends that ruling was error. We disagree.

In McMunn, the Supreme Court ruled that "Code § 8.01-401.1 does not authorize the admission in evidence, upon the direct examination of an expert witness, of hearsay matters of opinion upon which the expert relied in reaching his own opinion." 237 Va. at 566, 379 S.E.2d at 912. The focus of Nelson's testimony was her evaluation of Patterson's ability to accurately assess her own parenting abilities. Nelson's opinion was based on events amply documented by other sources, but which Patterson denied. Indeed, Nelson's opinion was based upon facts, not hearsay opinions, and falls within the scope of Code § 8.01-401.1. See also Cox v. Oakwood Mining, Inc., 16 Va. App. 965, 968-69, 434 S.E.2d 904, 906-07 (1993). The trial judge did not err in allowing its admission into evidence.

In addition, Patterson contends the trial judge erred by allowing into evidence hearsay concerning the number of school days missed by the children. Theresa Keller testified, without

-

objection, that when the children came into foster care, they "had missed so much school that they were behind."  Patterson's mother-in-law testified, without objection, that in the past she told Patterson the children "should be in school."  Nelson testified, without objection, as follows:

> I questioned [Patterson] about why her children did not attend school regularly. And she said that they did.  That they did not miss excessive amounts of school.  I showed documentation to her suggesting otherwise and she continued to deny that this was accurate.

Over objection, Keller testified that a teacher in the Lexington County school system told her that the two older children missed twenty-four days out of the thirty-nine days they were enrolled.  This evidence, while more specific, was cumulative of previous evidence concerning the children's poor school attendance which was admitted without objection.  Even assuming that the testimony by Keller was hearsay and not admissible under Code § 8.01-401.1, any error in its admission was harmless in light of the previous testimony.

## Sufficiency of the Evidence

"Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).  "In matters of a child's welfare, trial courts are vested with broad

-

discretion in making the decisions necessary to guard and to foster a child's best interests."  Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted).

> When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests.  On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."

Id.  "Code § 16.1-283 embodies '[t]he statutory scheme for the . . . termination of residual parental rights in this Commonwealth . . . [, which] provides detailed procedures designed to protect the rights of the parents and their child, balancing their interests while seeking to preserve the family.'"  Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

In pertinent part, Code § 16.1-283(B)(1) and (2), as amended, provides that if a child is placed in foster care after being found by a court to be neglected or abused, the trial judge may terminate residual parental rights upon a finding by clear and convincing evidence that termination is in the child's best interests and that:

> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

-

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent . . . within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent . . . by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Code § 16.1-283(B).

On appeal, under familiar principles, we view the evidence in the light most favorable to the party prevailing below. See Martin, 3 Va. App. at 20, 348 S.E.2d at 16. So viewed, the evidence proved that the Department had contact with Patterson and her family for at least nine years. In June 1997, Patterson hitchhiked with the children to Crewe, Virginia. The driver, an unknown man, paid for one night's lodging in a hotel. The next day, the family was without food, money or a place to stay. The children were placed in foster care.

Under the foster care plan, Patterson was to receive individual counseling, attend a parenting class, and maintain adequate housing. Patterson attended individual counseling for a year. She made so little progress that her therapist did not encourage her to take the parenting class. Nelson testified that Patterson functioned at a borderline mild retardation intelligence level. Her poor parenting skills, however, were not attributable to her intelligence level. Patterson was

-

unwilling or unable to admit unfavorable facts or to identify any way in which her parenting methods could improve. She denied making repeated housing moves, denied that her children had poor school attendance, and refused to acknowledge that her repeated housing changes had a negative impact on her children. She lacked insight into why her past decisions were contrary to the children's best interests. Although Patterson testified that she received about $1,500 a month in social security payments for herself and her two older children, she was unable to maintain any financial stability.

The evidence supports the trial judge's finding that termination of Patterson's parental rights was in the best interests of the children. When the children entered foster care, they were underweight and under height for their ages. In their foster home, the four children each grew physically and socially. They progressed notably in their schoolwork. Although the two children who were fourteen years old or older were entitled to object to termination in their individual cases, see Code § 16.1-283(G), they indicated to the trial judge in camera that they wished to remain together, even if it required termination.

The Department presented clear and convincing evidence that the children suffered from neglect, that the neglect presented a serious and substantial threat to their health and development, and that, notwithstanding the services provided to Patterson, it

-

was not reasonably likely that the conditions could be substantially corrected to allow their safe return to Patterson's care within a reasonable time.  Accordingly, we summarily affirm the decision.

<u>Affirmed.</u>